UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRIAN PEIXOTO,     )
    PETITIONER:    )
    v.             )     Civil Action No. 05-10510-RCL
LUIS SPENCER,      )
    RESPONDENT:    )
                   )

PETITIONER'S MOTION IN OPPOSITION TO
ORDER OF DISMISSAL AND
PRESENTATION SUPPORTING THE AWARD OF EQUITABLE TOLLING

INTRODUCTION

Now comes, Brian Peixoto,(hereinafter "Peixoto") petitioner in pro-se, and moves this honorable court, pursuant to the Court's order Granting the Respondent's Motion to Dismiss ... [8], and offers in support of his opposition his argument in support of the Court's awarding petitioner equitable tolling, of and for the time elapsed in excess of the procedural requirements in 28 U.S.C. § 2244(d)(1)(A) as established in the AEDPA, he supports these contentions as follows;

STATEMENT OF THE PROCEDURAL FACTS

1) On February 22, 2000, the Massachusetts Supreme Judicial Court (SJC) denied review of Peixoto's conviction for First Degree Murder, denying as well to exercise its power to reduce the conviction.

2) For AEDPA's 28 U.S.C. §2244 purposes, there is a 90 day

allowance allotted to file Certiorari review by the U.S. Supreme Court, extending the date until April 25, 2000.

3) In September 2000, Attorney Greg T. Schubert was retained to consult and prosecute the Habeas Corpus Petition[1] proceedings on Peixoto's Murder conviction. (Ex.#1, Ex.#2, Ex.#4)

4) Mr. Schubert instructed Joseph Peixoto (petitioner's father) (hereinafter "J. Peixoto") to request assignment by C.P.C.S.[2] in order to offset the fees required. J. Peixoto complied with Mr. Schubert's instructions. (Ex.#1)

5) In November 2000, the requested assignment of Mr. Schubert by C.P.C.S. was effected. (EX.#1, Ex.#4)

6) After said assignment by C.P.C.S., Mr. Schubert consulted with Peixoto, and recommended that he pursue Rule 30(b) as a predicate to the filing of the Federal Habeas Corpus Petition that Peixoto had insisted upon. (Ex.#4) Schubert relayed this recommendation to J. Peixoto as well. (Ex.#1)

7) As February 2001 came to an end, Peixoto became impatient and Mr. Schubert began avoiding his (collect) telephone calls from the prison, so Peixoto enlisted his family to expedite his post-conviction proceedings. (Ex.#4)

---

[1] Often referred to in the affidavits as Federal Appeals.
[2] Committee for Public Counsel Services.

8) In early March of 2001, Peixoto's family assigned his sister, Ms. Brenda Aguiar (hereinafter "Aguiar"), to act as liaison between Mr. Schubert and the other interested parties to reduce the redundancy of disseminating information by Mr. Schubert, and reduce the costs incurred to Mr. Schubert for collect calls. (Ex.#3)

9) Within days of being assigned by C.P.C.S. (March 14th. 2001) to prosecute the Rule 30(b) Motion, Mr. Schubert relayed to Aguiar that the substance of the work had been completed, and the Motion would be filed by months end. (Ex.#3)

10) Hearing this news from the above affiant, Joyce Coute prompted by Peixoto, contacted Mr. Schubert and was assured "Brian's (Peixoto) appeal[3] was submitted and all was well". (Ex.#2)

11) At a visit to see Peixoto in prison, Aguiar assured him that the motion was submitted and that he could rest assured the process was ongoing. (Ex.#3, Ex.#4)

12) Peixoto was appeased until he received a copy of Counsel's actual Rule 30(b) Motion, filed on July 16, 2001, whereupon Peixoto became enraged at having forfeited his allotted time in which to file his Habeas Corpus Petition, and expressed his anguish to Mr. Schubert, who then assured him of a reduced conviction from the success of the State post-conviction proceedings. (Ex.#4)

---
3 "Appeal" is generic to Ms. Coute, herein she refers to the Rule 30(b) Motion.

13) On January 23, 2002, Peixoto's Rule 30 Motion was denied for a lack of supporting evidence. The appeal was denied as well.

14) And then on October 25, 2002, Mr. Schubert filed a second Rule 30 (b) Motion, including an affidavit by Dr. Ronald S. Ebert, Ph.D.[4]. (Ex.#6(A))

15) On February 14, 2003, The second Rule 30(b) Motion was denied due to the failure to present the evidence in the first Rule 30(b) petition, and therefore, effectively waived under Mass. R. Crim. P. Rule 30 (c). (Ex.#5)

16) Mr. Schubert submitted a "Notice of Appeal" on February 21, 2003, disregarding the statutory requirements of G.L. c. 278 §33E, until Aguiar confronted Mr. Schubert, and he admitted his malpractice. This is documented in (Ex.#7), where Schubert's cover letter states, "I think they are Nuts," when the trial court attempted to demonstrate his ignorance which he later admitted to Aguiar. (Ex.#3 Ex.#6)

17) Realizing his error, Mr. Schubert filed the Motion to file late for leave to appeal, pursuant to G.L. c. 278 §33E, on October 7, 2003. (Ex.#8)

18) Peixoto was denied leave to appeal by the SJC on April 7, 2004, without clarification as to whether the denial was based upon the "waiver", indicative of a second Motion;

---

[4] Peixoto will explore these issues with Discovery if granted.

although, the Court's (Ireland J.) language enunciated the "New & Substancial" requirements of a second Motion under Rule 30(c).

19) Peixoto, as well as the Affiants in Exhibits 1, 2, and 3, were all informed by Mr. Schubert that there was no further legal recourse; furthermore, Mr. Schubert expressly stated, to all of the above named persons, that Brian Peixoto's chances for the filing of the Federal Habeas Corpus Petition had expired. Peixoto firmly and totally believed this to be true.

20) Incident to seeking inmate paralegal advice for a family and probate matter, Peixoto divulged the sensitive nature of his conviction to an inmate paralegal, Michael J. Filson, who encouraged and developed the instant petition, and who's affidavit is attached. (Ex.#10)

---

ARGUMENT

POST-CONVICTION LAWYER'S MALFEASANCE WAS
SO EGREGIOUS, SO AS TO MERIT AN
EXTRAORDINARY CIRCUMSTANCE REQUIRING
AN AWARD OF EQUITABLE TOLLING TO PETITIONER

The Petitioner, "Peixoto", allows that postconviction attorneys' malpractice are not qualified as 6th. Amendment constitutional violations and it is settled as a matter of federal law that poor post-conviction lawyering does not relieve a prisoner of what is otherwise a forfeiture under state law, e.g. Coleman v. Thompson, 501 U.S. 722, 752-57,

111 S.Ct. 2546 (1991). Under Massachusetts law "[w]hen counsel is appointed, ineffective assistance of counsel claim is viable regardless of whether defendant had a right to begin with." Breese v. Commonwealth, 415 Mass. 249, 251-52 n.4 (1993), and it should be ascertained that Peixoto does not claim an independent ground for relief under the provisions of 28 U.S.C. §2254. He alleges that the malfeasance and malpractice of the post-conviction lawyer, Schubert, when combined with the apparent deceptions he either caused or allowed to be entertained as factual, establish a prima facia case for the award of equitable tolling.

Where an attorney deceives his client, said deception may warrant equitable tolling,

> Equitable tolling of 1-year limitations period for filing a motion to vacate or a habeas petition should only apply where the petitioner or movant has demonstrated diligence in pursuing the matter.

Miller v. Collins, 305 F.3d 491, 495-96 (6th. Cir. 2002);

Where the petitioner acted diligently, and reasonably asserted his claims, equitable tolling applied, U.S. v. Wynn, 292 F.3d 226 (5th. Cir. 2002). The court might compare the instant case with the misinforming of the petitioner in 'Brambles' as to the date of the filing of the post-conviction motion in, Brambles v. Duncan, 330 F.3d 1197, 1201-02 (9th. Cir. 2003); or in Spitsyn v. Moore, 345 F.3d 796, 798 (9th.Cir.2003)("tolling state habeas petitioner's statue of

-7-

limitations due to "extraordinary circumstance" of egregious misconduct on the part of petitioner's attorney.")

Here, the petitioner, Peixoto, was led to believe initially that his AEDPA time requirements were satisfied, and then after the denial of the S.J.C. that he was estopped from filing his Habeas Corpus Petition. This same scenario was played out in Knight v. Schofield, 292 F.3d 709 (11th. Cir. 2002) where equitable tolling was awarded because petitioner was not informed of the disposition of his case. In yet another example of the distinction between 'normal' attorney error and egregious misconduct is:

> It is not inconsistent to say that attorney error normally will not constitute the extra ordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.

Baldayaque v. United States, 338 F.3d 145, 152 (2d. Cir. 2003).

In Massachusetts' First Circuit, the court ruled against awarding equitable tolling in, Lattimore v. DuBois, 311 F.3d 46, 54-56 (1st. Cir. 2002), acknowledging the availability of equitable tolling but ruling only an extraordinary circumstance would justify its application. The First Circuit Court of Appeals did agree with this ruling in, Neverson v. Faruharson, 366 F.3d 32 (1st. Cir. 2004)

> (Equitable tolling is appropriate in habeas cases only when circumstances beyond the

>petitioner's control have prevented him
>from filing on time, since care is required
>to avoid upsetting the strong concern for
>finality embodied in the habeas statue.)

In the instant case the egregious violations and obvious incompetence demonstrate documented prima facia circumstances which are sufficient to rise to the level of extraordinary. As in Nara v. Frank, 264 F.3d 310, 320 (3rd. Cir. 2001)( noting that claims of attorney misconduct may provide a basis for equitable tolling); and in United States v. Wynn, supra,

>...[h]olding that petitioner's "allegation
>that he was deceived by his attorney into
>believing that a timely §2255 motion had
>been filed on his behalf presents a 'rare
>and extraordinary circumstance' beyond a
>petitioner's control that could warrant
>equitable tolling [@1094] of the statue
>of limitations" if petitioner relied on
>the attorney's misrepresentations. Id.

It is Peixoto's contention that Mr. Schubert conveyed and represented himself to be the premier **Murder One Attorney** and as with his demeanor there was a strong aversion to doubt or question his knowledge. When Schubert talked law concerning Murder convictions he was presumed correct. This is evidenced in his stationary (Ex.#7). It wasn't until the paralegal came to review the case that it came to light as to his lack of knowledge. The petitioner, Peixoto, prays this court recognize the degree of his vulnerability and ignorance of the procedural technicalities concerning Post-Conviction and Habeas Corpus law. Petitioner, Peixoto, admits he continues to be ignorant of the law and prays this court grant latitude with

his comprehension of its dictates.

### PRAYER FOR RELIEF

Wherefore, Peixoto, moves this honorable court to award him equitable tolling so as to judge his petition with the highest standard of review. Or in the alternative;

a) Grant an evidentiary hearing where the petitioner may have a venue to prove forth his contentions.

b) Appoint the petitioner an attorney at law, who will present his issues and contentions in a proper manner before this honorable court.

c) Any such relief as this court shall deem fair and just.

Respectfully Submitted;

Brian Peixoto, pro-se